FILED

98 NOV -6 PM 2:37

U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

DOYLE HAYES,                          )

    Plaintiff,                        )

vs.                                   )      Civil Action No. CV-97-S-1591-NE

SAM'S CLUB #8107;                     )
WAL-MART STORES, INC.;
and DALE GREEN,                       )           ENTERED

    Defendants.                       )           NOV 0 6 1998

## MEMORANDUM OPINION

Plaintiff Doyle Hayes brings this action against his former employer, "Wal-Mart,"[1] claiming he was demoted, constructively discharged, and harassed because of his age. Hayes further alleges he was retaliated against because of his complaints of discrimination. Hayes seeks damages under 29 U.S.C. § 621 et seq., the Age Discrimination in Employment Act ("ADEA"). Hayes also alleges state law claims, including breach of contract, civil conspiracy, defamation, and intentional interference with business relations. This action presently is before the court on defendants' motion for summary judgment on all claims.[2]

---

[1] Plaintiff worked as a manager, and later as an assistant manager, at Sam's Club locations. Sam's Club is owned by Wal-Mart Stores, Inc. The court will refer to plaintiff's employer as "Wal-Mart."

[2] Defendants also move this court for leave to file a reply brief for purposes of this motion. The court granted said motion separately, and considered the attached brief in its analysis of the motion for summary judgment.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." Rule 56(c), Fed. R. Civ. P. The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(*per curiam*). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Jeffery*, 64 F.3d at 593.

2

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v.*

3

*Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

With the foregoing standards in mind, this court now will summarize the undisputed facts, or, if disputed, shall state them in a manner most favorable to the non-moving party, plaintiff Doyle Hayes.

## II. FACTS

Plaintiff Doyle Hayes was the manager of the Sam's Club store in Huntsville, Alabama (Club #8107), from 1987 until March 1997. He was demoted to an assistant manager position on March 24, 1997, and transferred to the Sam's Club store in Mobile, Alabama. Hayes was 57 years old on the date of transfer. He resigned from the company on April 30, 1997.

### A. Employment History While Under Dale Green

Dale Green served from April 1995 until May 1996 as the director of operations for seven stores in a region that included Hayes' store. Store #8107 also was in a broader category, division 18B, over which Brad Link was the vice president.

In 1993, under the management of Hayes and before Green and

4

Link took charge of the region and division respectively, Club #8107 won "club of the year" in the region, and, was rated "best-managed club" in the region. As defendants demonstrate, however, the store's performance decreased markedly in Hayes' final two years as manager. (See Declaration of Brad Link at ¶¶ 11, 12.)

In May or June of 1995, Green, making his second visit, joined Link in his first visit to Club #8107. During the visit, Hayes failed to take notes of Link's and Green's directions on making certain changes or improvements. Hayes contends he was giving undivided attention to the conversation, and relying on Green to send him a copy of Green's notes. Nevertheless, Green and Link decided to discipline Hayes for not appreciating the gravity of their direction.

The disciplinary procedure in effect at that time, and so reflected in the employee manual, varied depending on the gravity of the misconduct: "serious misconduct" or "general misconduct." "General misconduct" was addressed through a series of measures, depending on whether the misconduct was the first instance. The first step was verbal coaching, followed by a first, then second written warning. The disciplinary warning was a "decisionmaking day" write-up, which required the employee to take the next day off from work with pay, and return the next scheduled work day with a

5

"plan of action," detailing how he planned to correct the problem. A single incident of "serious misconduct," however, could warrant a "decisionmaking day" write-up or even termination. (*See* Green deposition at 32-35.)

Green issued a decisionmaking day write-up to Hayes on Thursday, June 29, 1995. Upon issuing this write-up, Green allegedly said to Hayes "I can get a younger man to do a better job than you're doing." (Plaintiff's deposition, Vol. I at 22.) Link, upon hearing Hayes' reasoning behind his actions, changed his mind regarding the disciplinary measures taken. Link then felt a decisionmaking day write-up was inappropriate. Link made it known to the personnel manager that he did not want this write-up reflected in Hayes' file. (*See* Link deposition at 18-19.)

The following Saturday, July 1, 1995, Hayes participated in a conference call with Green and the other club managers in the region. Allegedly, Green used profane language and threatened to write-up all of the managers if they did not improve store standards. None of Green's language, nor his threats, were aimed at any particular manager. (*See* Plaintiff's deposition, Vol. I at 33-34, 42.)

Seeking Hayes' plan of action, Green returned to store #8107

6

the following Monday, July 3. Hayes handed Green his plan, which included his statement of resignation. (*See* Plaintiff's deposition, Vol. I at 26.) Hayes then left the store. After Hayes left, Green held a meeting with store employees. According to Hayes' testimony based upon conversations with employees present at the meeting, Green told the employees Hayes said that he was too old to change his ways and that he had enough money for retirement. (Plaintiff's deposition, Vol. I at 27.) Hayes denies saying anything of the kind. (*Id.*)

Hayes made his resignation and complaints of discrimination by Green known to several company officials, including the president, Dean Sanders. Hayes received several phone calls, including one from Link and one from Sanders, convincing him to return to work. After a meeting with Green, Hayes returned on or about July 7, 1995.

Several months passed without problems between Green and Hayes. During late May, 1996, however, Hayes had a problem with an employee which, he claims, prompted a visit from Green and the ensuing criticism of store conditions. The employee and Green are both African-American. Hayes is white.

Green then demanded a plan of action explaining why Hayes had

7

disobeyed his instructions that particular store improvements be made.  Hayes complied with the disciplinary procedure.  Green then found other problems at the store and apparently said he was planning to give Hayes a second decisionmaking day write-up that day.

Later that day, the two argued whether Link had directed Hayes to do something at the store which had not been done.    This exchange included Green saying "how can I respect you when you tell me Brad Link is a liar?   You told me twice he is a liar." (Plaintiff's deposition, Vol. I at 101.)  Hayes responded:  "Dale, I tell you what the problem is, you're the problem. . . . [T]he way you treat blacks instead of whites."   Shortly thereafter, Hayes said he could work for Green no longer.

Hayes claims these events of May 20, 1996, including the discipline, "were retaliation for mentioning the black employee." (Plaintiff's brief in opposition at 8.)  The personnel director and regional personnel manager assured Hayes they were investigating the problems between him and Green.    Ultimately, Wal-Mart transferred Hayes and his Huntsville store #8107 to another region: a region within Link's division 18B, but supervised by director of operations Randy Blankley.

8

## B. Employment History While Under Randy Blankley

Blankley visited Hayes' store a couple of times within the first few weeks of the transfer to his region. On one occasion, Hayes was out of town. Hayes had made Blankley aware of his schedule, but Blankley visited the store nonetheless, and allegedly asked several questions about Hayes' work habits and took some interest in Hayes' office. Hayes, though acknowledging it was within Blankley's duties, felt this visit and some of the inquiries were inappropriate given his absence. (Plaintiff's deposition, Vol. I at 187-97.) During the second visit, Blankley began to identify areas in need of improvement, and Hayes said "Randy, I can't take it, I'm going to have to leave." (*Id.* at 189.) Hayes then drafted a brief letter and tendered his resignation. Again, Hayes was talked into returning.

Hayes had performance problems that led to an August 29, 1996 "final written coaching." (*Id.* at 245-46.) The write-up identified problems in several areas of management: (1) the timeliness of certain reports; (2) audits; (3) certain areas of the store, *e.g.*, the "fresh" department; and (4) deficiencies in risk control surveys. Hayes admitted that, to some extent, these problems existed, or could have existed. (Plaintiff's deposition, Vol I. at 246-49.) The risk control surveys were performed by a

9

loss prevention supervisor, who evaluated security of stores to reduce theft, inventory loss, or other loss due to mismanagement and improper paperwork. A club must score a minimum of 216 on the risk control survey to be deemed acceptable. (Declaration of Brad Link at ¶9.) Hayes' store was evaluated in June and August of 1996, and received scores of 120 and 138, respectively. (*Id.*, exhibit B.)

Before the "final written coaching," Hayes had not received a verbal or written coaching. Blankley had already prepared Hayes' 1997 evaluation, however, which rated Hayes below standard. (*Id.* at ¶8, at exhibit B.) The final written coaching warned Hayes that, absent improvement, he would be demoted to assistant manager. (Plaintiff's deposition, Vol. I at 249.)

Hayes filed a charge of discrimination with the Equal Employment Opportunity Commission on September 11, 1996. Defendants allegedly received a copy in December 1996. (*See* Plaintiff's affidavit.)

In March of 1997, Blankley recommended to Link that Hayes be demoted to an assistant manager position. (Declaration of Brad Link at ¶8.) Hayes was informed of his demotion on March 24, 1997. (Plaintiff's brief in opposition at 9.)

Hayes contends he should have been offered a position as "co-

10

manager" upon his demotion, a position which commands $50,000 yearly and 1% of the store's profits. The determination of whether a store manager should be demoted to a co-manager position or an assistant manager position turns upon the magnitude of the problems with the manager and the amount of retraining that is necessary.

Hayes allegedly admitted he had not been performing well, and, that he had no motivation to do his job. (*See* Declaration of Randy Blankley ¶ 7.)   After considering the position, Hayes sought a transfer to the store in Mobile, Alabama.  Blankley informed Hayes his salary in Mobile would be $42,000 a year with no bonus.

Hayes resigned on April 30, 1997.  Hayes complains of no problems or incidents related to the position in Mobile, but he admits he "couldn't never get [his] attitude right" and "never could put [his] heart into Mobile, Alabama." (Plaintiff's deposition, Vol. I at 212.)  Hayes has not been employed elsewhere since his resignation.

### III. DISCUSSION

### A.   Standard For Evaluation Of ADEA Claims

In ADEA cases, the plaintiff has the ultimate burden of proving that age was a determinative factor in the employer's decision to terminate his employment.  *Verbraeken v. Westinghouse Electric Corporation*, 881 F.2d 1041, 1045 (11th Cir. 1989).

11

Initially, the plaintiff must establish that age was a determining factor in the employer's decision with direct evidence,[3] circumstantial evidence, or statistical evidence. *Alphin v. Sears, Roebuck & Company*, 940 F.2d 1497, 1500 (11th Cir. 1991).

To avoid summary judgment on an age discrimination claim, a plaintiff relying on circumstantial evidence must comply with the framework created for disparate treatment claims defined by the Supreme Court in a series of decisions rendered over a period of 20 years, beginning with *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), then elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and finally elucidated in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The analytical framework developed by that trilogy has three steps. Although these cases involved discrimination claims under Title VII, a variant of the analysis applies to claims under the ADEA as well. *Alphin v. Sears, Roebuck & Company*, 940 F.2d 1497, 1500 (11th Cir. 1991). The goal of the three-step process is that of "progressively ... sharpen[ing] the

---

[3] "Only the most blatant remarks, whose intent could only be to discriminate on the basis of age constitute direct evidence." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1226 (11th Cir. 1992).

12

inquiry into the elusive factual question of intentional discrimination." *St. Mary's Honor Center*, 509 U.S. at 506, 113 S.Ct. at 2746 (quoting *Burdine*, 450 U.S. at 255 n.8, 101 S.Ct. at 1094 n.8).

### 1. First Step of Analysis

Initially, plaintiff has the burden of proving, by a preponderance of the evidence, a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 252-53, 101 S.Ct. at 1093; *St. Mary's Honor Center*, 509 U.S. at 506, 113 S.Ct. at 2746-47.

"Establishment of the *prima facie* case in effect creates a [rebuttable] presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254, 101 S.Ct. 1094 (quoted with approval in *St. Mary's Honor Center*, 509 U.S. at 506, 113 S.Ct. at 2747).

### 2. Second Step of Analysis

When plaintiff makes out a *prima facie* case, "[t]he burden ... shift[s] to the employer to <u>articulate</u>" — but <u>not prove</u>[4] — "some

---

[4] *See, e.g.*, Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094 (1981)("The defendant need not persuade the court that it was actually motivated by the proffered reasons"); *see also*, Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 84 F.3d 1380, 1386 (11th Cir. 1996)("This burden on the employer is one of production, not persuasion"); Busby v. City of Orlando, 931 F.2d 764, 77 n.12 (11th Cir. 1991)("this 'burden of proof' is to be

13

legitimate, nondiscriminatory reason" for the contested employment

decision.   *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824

(emphasis supplied); *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

The Supreme Court described this shift in the burden of going

forward with evidence in the following manner:

> Thus, the *McDonnell Douglas* presumption places upon the
> defendant the burden of producing an explanation to rebut
> the prima facie case — *i.e.*, the burden of "producing
> evidence" that the adverse employment actions were taken
> "for a legitimate, nondiscriminatory reason."   ...
> "[T]he defendant must clearly set forth, through the
> introduction of admissible evidence," reasons for its
> actions which, if believed by the trier of fact, would
> support a finding that the unlawful discrimination was
> not the cause of the employment action.   ...   It is
> important to note, however, that although the *McDonnell
> Douglas* presumption shifts the burden of production to
> the defendant, "[t]he ultimate burden of persuading the
> trier of fact that the defendant intentionally
> discriminated against the plaintiff remains at all times
> with the plaintiff," ....   In this regard it operates
> like all presumptions as described in Rule 301 of the
> Federal Rules of Evidence:
>
> > "In all civil actions and proceedings not
> > otherwise provided for by Act of Congress or
> > by these rules, a presumption imposes on the
> > party against whom it is directed the burden
> > of going forward with evidence to rebut or
> > meet the presumption, but does not shift to
> > such party the burden of proof in the sense of
> > the risk of nonpersuasion, which remains
> > throughout the trial upon the party on whom it
> > was originally cast."

understood as a burden of production, not persuasion" (citing Wards Cove Packing
Co. v. Atonio, 490 U.S. 642 (1989)).

14

*St. Mary's Honor Center*, 509 U.S. at 506-07, 113 S.Ct. at 2747
(citations to *Burdine* omitted).

If a defendant figuratively sits on its hands, and offers no
"admissible evidence which would allow the trier of fact rationally
to conclude that the employment decision had not been motivated by
discriminatory animus," *Burdine*, 450 U.S. at 257, 101 S.Ct. at
1096, then "the court must award judgment to the plaintiff as a
matter of law ...." *St. Mary's Honor Center*, 509 U.S. at 509, 113
S.Ct. at 2748.

On the other hand, "[i]f the defendant carries this burden of
production, the presumption raised by the *prima facie* case is
rebutted," *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094-95, and
"drops from the case." *Id.*, at 255 n.10, 101 S.Ct. at 1095 n.10;
*accord, St. Mary's Honor Center*, 509 U.S. at 507-08, 113 S.Ct. at
2747-48. "A satisfactory explanation by the defendant destroys the
legally mandatory inference of discrimination arising from the
plaintiff's initial evidence." *Burdine*, 450 U.S. at 256 n.10, 101
S.Ct. at 1095 n.10.

> The plaintiff then has "the full and fair opportunity to
> demonstrate," ... "that the proffered reason was not the
> true reason for the employment decision," ... and that
> race [or age] was. He retains that "ultimate burden of
> persuading the [trier of fact] that [he] has been the
> victim of intentional discrimination." ...

15

*St. Mary's Honor Center*, 509 U.S. at 507-08, 113 S.Ct. at 2747-48

(citations to *Burdine* omitted).

### 3.  Third Step of Analysis

"The defendant's 'production' (whatever its persuasive effect)

having been made," *id.*, 509 U.S. at 511, 113 S.Ct. at 2749, "the

factual inquiry proceeds to a new level of specificity." *Burdine*,

450 U.S. at 255, 101 S.Ct. at 1095.

> [T]he "new level of specificity" ... refer[s] to the fact
> that the inquiry now turns from the few generalized
> factors that establish a prima facie case to the specific
> proofs and rebuttals of discriminatory motivation the
> parties have introduced.

*St. Mary's Honor Center*, 509 U.S. at 516, 113 S.Ct. at 2752.

Thus, at this third level of analysis, plaintiffs have the

burden of proving that the defendant's explanation is "a pretext

for discrimination." To do that, plaintiff must show both that the

defendant's stated reasons for the contested employment decision

are false, or not worthy of belief, and that it is more likely true

than not true that discrimination was the true reason.

> [A] reason cannot be proved to be a "pretext for
> discrimination" unless it is shown both that the reason
> was false, and that discrimination was the real reason.

*St. Mary's Honor Center*, 509 U.S. at 515, 113 S.Ct. at 2752.

"The plaintiff [opposing summary judgment] must ... offer

16

specific and significantly probative evidence that the employer's
alleged purpose is a pretext for discrimination."    *Schuler v.
Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986).
As the Second Circuit recently explained:

> a plaintiff opposing such a [summary judgment] motion
> must produce sufficient evidence to support a rational
> finding that the legitimate nondiscriminatory reasons
> proffered by the defendant were false, and that more
> likely than not the employee's age was the real reason
> for the [contested employment action].

*Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir. 1995).

Initially, however, before addressing each claim alleged under
the ADEA, the court must dismiss defendant Green from these claims.
Green is an individual employee of Wal-Mart, and was not the
decisionmaker for the contested adverse employment action.   Green
was not Hayes' "employer" and cannot be held liable under the ADEA.
*See Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995); *see also*
*Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)
(analogous Title VII claim).

**B.   Hayes' Wrongful Demotion Claim**

In an ADEA case involving demotion, "a plaintiff may establish
a *prima facie* case by showing:   (1) that he was a member of the
protected group of persons between the ages of forty and seventy;
(2) that he was subject to adverse employment action; (3) that a

17

substantially younger person filled the position that he sought or from which he was discharged; and (4) that he was qualified to do the job for which he was rejected." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1997) (citing, *e.g.*, *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) (stating that an ADEA plaintiff must show that he was replaced by someone "substantially younger," not necessarily by someone under age 40)). As discussed above, a successful *prima facie* case gives rise to a presumption of discrimination, which the defendant must then rebut by coming forward with legitimate nondiscriminatory reasons for the employment action at issue. If defendant successfully rebuts the presumption, the burden shifts back to plaintiff to show that defendants' proffered reasons were pretextual.

### 1. Protected class

Plaintiff, Doyle Hayes, was born February 7, 1940. At all times relevant to the employment actions at issue, Hayes clearly was a member of the class protected by the ADEA. *See Turlington*, 135 F.3d at 1432.

### 2. Adverse employment action

Wal-Mart demoted Doyle Hayes from a position of store manager to one of assistant manager on March 24, 1997. A substantial

18

reduction in compensation accompanied the change of position. Hayes unquestionably suffered an "adverse employment action" at the hands of Wal-Mart.

### 3.    Replaced by substantially younger person

Doyle Hayes was replaced as manager of Club #8107 by Bruce Kash. Kash was 45 years old when he took that position. Hayes was 57 years old when he was demoted. Although Kash also is in the class protected by the ADEA, he is substantially younger than Hayes. This court finds the difference in age, twelve years, sufficient to satisfy the third element of Hayes' *prima facie* case. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. at 313, 116 S.Ct. at 1310.

### 4.    Qualified for the position in question

The position in question is the position of store manager. Hayes served as store manager for almost ten years, from 1987 until March 1997. Even so, defendants challenge Hayes' qualifications, citing some inconsistent evaluations and problems with the performance of Club #8107. Nevertheless, Hayes won an award in 1993 for operating the "best-managed" Sam's Club in his region of about seven Clubs. Furthermore, Hayes received an evaluation of "above average" for the first six months of 1995. (Plaintiff's deposition, Vol. II, exhibit 33.) For purposes of this motion, and

19

in light of the foregoing history, the court finds Hayes qualified.

Thus, in accordance with the Eleventh Circuit's forgiving standard at the summary judgment stage of an ADEA case, *see Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir. 1996), this court finds Hayes has satisfied his burden of proving a *prima facie* case of an ADEA violation for his demotion.

### 5. Legitimate nondiscriminatory reasons

Wal-Mart claims its decision to demote Hayes was based upon his poor performance in the club manager position. Wal-Mart cites performance problems in the four areas identified in Blankley's August 29, 1996 "final written coaching" of Hayes: (1) the timeliness of certain reports; (2) audits; (3) certain areas of the store, *e.g.*, the "fresh" department; and (4) deficiencies in the risk control surveys. Hayes admitted that, to some extent, these problems existed, or could have existed. (Plaintiff's deposition, Vol. I at 246-49.) Blankley's 1997 evaluation of Hayes rated his performance below standard, and also indicated performance problems in other specific areas: (1) membership/sales; (2) merchandising; (3) expense control; and (4) profit. (Declaration of Brad Link, exhibit B.)

Poor performance is a legitimate nondiscriminatory reason for demotion. *See Jackson v. City of Killeen*, 654 F.2d 1181 (5th Cir.

20

1981).[5]    Defendants satisfy the burden of producing legitimate
nondiscriminatory reasons for demoting Hayes.

### 6.    Evidence of pretext

Hayes attempts to show that defendants' reasons for demoting
him are pretextual by offering excuses for, and comparisons of, the
less than optimal performance of his store.    The comparisons to
other stores are based largely on Hayes' own estimates and involve
different markets.    For comparison of his own performance, Hayes
cites his performance from several years ago.    Furthermore, Hayes
contends, though his performance evaluations may have been based in
fact, the negative aspects were exaggerated.    (*See* Plaintiff's
deposition, Vol I at 249.)    Standing alone, these arguments of
pretext are unpersuasive.    Hayes does add, however, that his
demotion was in furtherance of a scheme "to get rid of older
managers."  (Plaintiff's brief in opposition at 23.)

Hayes implicates Green and Link in the alleged scheme.
Specifically, Hayes cites Green's comments to him in June of 1995:
"I can get a younger man to do a better job than you're doing."
(Plaintiff's deposition, Vol. I at 22.)    Hayes also cites the
affidavits of Jason Patterson (Plaintiff's evidentiary submission,

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 20, 1981.

21

exhibit G), a former Sam's Club employee, and of Sue McMahan, an
employee at Club #8107 (*id.*, exhibit H), and the deposition
testimony of Tommy L. Cole, a former Sam's Club manager (*id.*,
exhibit C).

First, Cole testified Green had told him in August of 1995
that the Huntsville Sam's Club may soon "come open." (*Id.* at 72-
73.)  McMahan stated that, in the meeting of employees Dale Green
convened immediately following Hayes' departure on July 3, 1995,
Green told the gathering "someone younger in club #8107 was what we
needed."     (Plaintiff's evidentiary submission, exhibit H.)
Furthermore, and most persuasively, Jason Patterson stated:

> I [was present] when Dale Green received a copy of this
> pending suit against him by facsimile.  Dale Green was
> very upset, and was mad that Brad Link had not been named
> in the suit.  Dale told me that Brad felt there were too
> many older managers in Dale's region, who were too old to
> run the warehouses.... Dale Green told me it was Brad
> Link who wanted to get rid of Doyle and the older
> managers, and not him.  After Doyle's problems in 1995,
> Dale told me that Doyle was just too old to run the
> warehouse, and Brad had gotten him to get rid of him.

(Plaintiff's evidentiary submission, exhibit G.)  Patterson also
stated he had been told to discipline employees solely "to be able
to get rid of them."  (*Id.*)  Finally, after his resignation and
after this suit had been commenced, Patterson asserts, he was
offered a raise and a position he had coveted.  (*Id.*)

22

The court therefore finds the evidence Hayes has proffered creates a genuine issue of material fact as to whether defendants' stated reasons for the demotion are pretextual, *see generally Howard v. BP Oil Co.*, 32 F.3d 520, 525-26 (5th Cir. 1994), and defendants' motion for summary judgment on this claim accordingly is due to be denied.

## C.   Constructive discharge

The contours of a constructive discharge claim were sketched by the Eleventh Circuit in *Hill v. Winn Dixie Stores, Inc.*, 934 F.2d 1518, 1527 (11th Cir. 1991), as follows:

> The law in this circuit with respect to constructive
> discharge is well-established.  To show constructive
> discharge, the employee must prove that his working
> conditions were so difficult or unpleasant that a
> reasonable person would have felt compelled to resign."
> *Wardwell v. School Bd. of Palm Beach County, Florida*, 786
> F.2d 1554, 1557 (11th Cir. 1986).  *See Young v.
> Southwestern Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th
> Cir. 1975).  Before finding a constructive discharge,
> this court has traditionally required a high degree of
> deterioration in an employee's working conditions,
> approaching the level of "intolerable."  *Wardwell*, 786
> F.2d at 1558 (holding that an employer's failure to
> promote and consequent embarrassment to employee,
> together with employee's added workload, "simply do not
> rise to the intolerable level at which a reasonable
> person would feel compelled to resign").

Hayes relies almost exclusively on the problems he had with Dale Green to prove that his working conditions were intolerable.

23

Hayes had no contact or employment relationship with Green following his transfer into Blankley's region in June of 1996, however.

Hayes further alleges that "unreasonable demands, and the unfair evaluations by Green and Blankley created intolerable working condition [sic]." Hayes cites no specific demands as unreasonable, nor does the record reflect anything of that nature. Again, Hayes' contact with Green ceased in June of 1996. In addition, Blankley issued only one evaluation of Hayes. Furthermore, nothing in the record suggests that any undesirable working condition existed for Hayes in his position as assistant manager in the Mobile store. Finally, Wal-Mart officials had encouraged Hayes not to terminate his employment with them on two prior occasions.

The court therefore finds that no reasonable person would have felt compelled to resign because of the work environment Hayes faced any time after his transfer into Blankley's region, which occurred some ten months prior to his resignation. Accordingly, the court finds summary judgment is appropriate for this claim.

**D. Harassment**

A plaintiff also may establish a violation of the ADEA by proving the existence of a work environment hostile to those

24

between the protected ages of forty and seventy. *See EEOC v.
Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1249 (11th
Cir. 1997); *see also Clemmer v. Enron Corporation*, 882 F. Supp. 606
(S.D. Tex. 1995); *Spence v. Maryland Casualty Company*, 803 F. Supp.
649, 671 (W.D. N.Y. 1992), *aff'd*, 995 F.2d 1147 (2d Cir. 1993). An
action for age discrimination based on a hostile work environment
theory must also be subjected to the *McDonnell Douglas* burden
shifting analysis. *See Spence*, 803 F. Supp. at 671.

Although Hayes pled and argued a claim for harassment together
with his constructive discharge claim, and these claims meet the
same fate, the court will nevertheless address them separately.

Establishing a *prima facie* case on a hostile work environment
theory requires Hayes to show: (1) he was a member of a protected
class; (2) he was subject to unwelcome harassment; (3) the
harassment was prompted solely because of his age; and (4) the
harassment affected a term, condition, or privilege of his
employment. *See Kotcher v. Rosa and Sullivan Appliance Center,
Inc.*, 957 F.2d 59 (2d Cir. 1992).

Hayes is a member of a class protected by the ADEA, and was
subjected to unwelcome harassment by Dale Green. Furthermore, this
court will assume for purposes of this motion that the harassment

25

was prompted solely by Hayes' age, even though the evidence establishes Green dealt with all employees harshly. Even so, to establish the fourth element, Hayes must show that his workplace was "permeated with discriminatory intimidation, ridicule and insult ... sufficiently severe or pervasive to alter the conditions of his employment...." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (internal quotation marks and citations omitted). Isolated and sporadic incidents do not rise to the level of an actionable hostile work environment. *See Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1972).

Hayes can offer only the statement by Green that a younger man could do a better job. Moreover, any action based on this isolated comment is time-barred, because Hayes did not file a charge of discrimination with the EEOC within 180 days of the incident. *See Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 662 (11th Cir. 1993). Nothing else in the record would give rise to a claim of harassment because of Hayes' age. Therefore, the court finds summary judgment is due to be granted for this claim.

**E.    Retaliation**

To establish a *prima facie* case of retaliation, Hayes must

26

show:  (1) he engaged in statutorily protected expression;  (2) he
suffered an adverse employment action; and (3) some causal relation
between  the  two  events.     *See  Meeks  v.  Computer  Associates
International*, 15 F.3d 1013, 1021 (11th Cir. 1994).  Once the *prima
facie* case is established, the court resorts to the familiar
burden-shifting analysis described above.  *Id*.

     Hayes complained of racial discrimination directly to Dale
Green, and complained of age discrimination to President Sanders
and other Wal-Mart officials in 1995.   Hayes filed a charge of
discrimination with the EEOC on September 11, 1996, complaining of
age discrimination.   Hayes engaged in protected expression for
purposes of a *prima facie* case of retaliation.   *See Rollins v.
State of Florida Department of Law Enforcement*, 868 F.2d 397, 400
(11th Cir. 1989).

     Hayes suffered an adverse employment action (demotion) on
March 24, 1997.

     As is so often the case for claims of retaliation, the rub
lies in establishing a causal connection between the protected
expression and the adverse employment action.  Nevertheless, the
causal link requirement is construed broadly:  "a plaintiff merely
has  to  prove  that  the  protected  activity  and  the  negative

27

employment action are not completely unrelated." *Meeks*, 15 F.3d at 1021.

That forgiving standard notwithstanding, Hayes cannot rely solely on the temporal proximity between the expression and his demotion, which was at least six months. *See, e.g., Stanton v. Allied Signal, Inc.*, 1997 WL 210810, at *1 (6th Cir. 1997) (unpublished disposition) (finding no causal link for termination eight months after EEOC charge); *cf. Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986) ("The short period of time [one month] between the filing of the discrimination complaint and the ... [adverse employment action] belies any assertion by the defendant that the plaintiff failed to prove causation.") (Emphasis supplied).

Furthermore, Wal-Mart's responses to Hayes' complaints indicate the reaction to Hayes' expression was, in fact, the opposite of retaliatory. Wal-Mart officials, including the President and personnel directors, encouraged Hayes to remain in his position. In fact, Wal-Mart took steps to remedy the problems of which Hayes complained, e.g., officials investigated the complaints, fostered a reconciliation (albeit temporary) between Hayes and Green, and ultimately reorganized the geographic division

28

of their stores to accommodate Hayes.

In addition, Hayes can establish no causal connection or discriminatory treatment with comparison evidence.[6] Hayes himself cites demotions and alleged forced resignations of other managers (Plaintiff's deposition, Vol. I at 59-60), none of whom had complained about discrimination (Declaration of Brad Link ¶¶ 16-18).

The court therefore finds that Hayes' complaints and his demotion are completely unrelated. The court notes, in particular, Wal-Mart's immediate reactions and accommodations of Hayes after his complaints.   Furthermore, considering the thin thread upon which Hayes hangs his wrongful demotion claim (the scheme of Brad Link and Dale Green to rid their region of older managers), the cause of his demotion already was present and had no relation to Hayes' complaints.  If anything, Hayes' version of events suggests his complaints prolonged his tenure as manager, because the alleged conspirators accommodated Hayes for fear of a lawsuit.[7]

---

[6] The evidence of comparative treatment cited by Hayes actually helps defendants in all of Hayes' claims, because the comparisons imply that neither Hayes' complaints nor his age were reasons behind the demotion of Hayes.   (See Defendants' reply brief at 5-6; Defendants' brief in support of motion at 24.)

[7] Link's response is evidenced by Wal-Mart's accommodation of Hayes after his complaints.  His alleged co-conspirator, Dale Green, gave Hayes an above-average performance evaluation on the evaluation following Hayes' initial complaints.  This is the only time Green gave Hayes an above-average rating.

29

Accordingly, the court finds defendants' motion is due to be granted on this claim.

**F.    Breach of contract**

Doyle Hayes contends Randy Blankley's failure to follow the disciplinary procedure set forth in Wal-Mart's employee manual constituted a breach of contract.  This court finds genuine issues of material fact exist as to all aspects of this claim:  *i.e.*, as to whether the disciplinary procedure set forth in the employment manual gave rise to a unilateral contract; what the terms of that contract were; whether Blankley's actions breached the agreement; and what damages resulted.  *See generally Hoffman-La Roche, Inc. v. Campbell*, 512 So.2d 725 (Ala. 1987).  Accordingly, for purposes of this claim, the motion of defendants Sam's Club #8107 and Wal-Mart Stores, Inc. is due to be denied.

Hayes makes no allegation, however, implicating defendant Dale Green as a party to the alleged contract.  No action for breach of contract lies against defendant Dale Green, an individual employee of defendant Wal-Mart Stores, Inc.

**G.    Intentional interference with business relations**

Doyle Hayes claims Dale Green tortiously interfered with Hayes' business relationship with Wal-Mart.  The Supreme Court of Alabama adopted the tort of interference with business relations

30

based on Restatement (Second) of Torts § 767. This action has five elements: (1) the existence of a contract or business relation; (2) the defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; (4) the absence of justification for the defendant's interference; and (5) damage to the plaintiff as a proximate result of the interference. *See Soap Company v. Ecolab, Inc.*, 646 So. 2d 1366, 1371 (Ala. 1994). In addition to establishing these elements, when the defendant is an employee of one of the parties to the contract at issue, plaintiff bears the burden of proving defendant was acting outside the scope of his employment, and, with malice. *See Hickman v. Winston County Hospital Board*, 508 So. 2d 237, 239-40 (Ala. 1987).

Hayes argues as follows: "Green intentionally used his position to interfere with Hayes [sic] legitimate business relationship with Wal-Mart, by harassing, mistreating and having Hayes demoted. Because of his intentional interference with Hayes' business relationship, Hayes was demoted, and suffered extensive damages." (Plaintiff's brief in opposition at 35.) Hayes does not even contend, much less prove, Green was acting outside the scope of his employment. Moreover, no evidence suggests Green faced any

31

discipline for his actions.

Even if Hayes had met his burden with regard to scope of employment and malice, he could not prove the final element of the claim:  causation and damages.  The only tangible (and actionable) damages from any alleged interference with Hayes' relationship with Wal-Mart was the demotion.  Hayes ignores the intervening time period, however, as well as the change of his director of operations.  The court notes, particularly, that Hayes maintained the same contractual relation with Wal-Mart for almost a full year after his last contact with (and last alleged interference by) Dale Green.  Furthermore, Randy Blankley had served as Hayes' director of operations for the period preceding the demotion, and he both issued the poor performance evaluation that served as the basis for the demotion, and recommended Hayes' demotion.  Thus, Hayes cannot establish that his demotion "was a result of" Green's actions.

Accordingly, defendants' motion is due to be granted for this claim.

**H.   Civil conspiracy**

"Civil conspiracy is a combination of two or more persons to accomplish an unlawful end (by civil law standards) or to accomplish a lawful end by unlawful means."   *Eidson v. Olin Corporation*, 527 So. 2d 1283, 1285 (Ala. 1988).   An alleged

32

conspiracy itself furnishes no civil cause of action; rather, the gist of the action is the underlying wrong committed by virtue of the alleged scheme. *See Allied Supply Co. v. Brown*, 585 So. 2d 33, 36 (Ala. 1991). Consequently, a plaintiff need not allege "[a] great quantum of detail ... as to the formation of the conspiracy." *Eidson*, 527 So. 2d at 1285 (quoting *O'Dell v. State ex rel. Patterson*, 117 So. 2d 164, 168 (Ala. 1959)).

Plaintiff contends Dale Green "conspired with Brad Link to deprive Hayes of managers [sic] position at Sam's Club #8107." (Plaintiff's brief in opposition at 35-36.) Defendants argue this contention is contrary to Hayes' deposition testimony, in which Hayes indirectly alleged that Green conspired with Bob Ford.[8]

---

[8]    Hayes testified in his deposition as follows:

Q:    Do you think Dale green conspired with anybody to get you out of the company?

A:    I don't know about that. It's possible.

Q:    Why do you say it's possible?

A:    Well, you asked me what I thought. I don't have any facts on it. I feel like all of a sudden he and Bob [Ford] started spending a lot of time together.

     . . .

Q:    Is there any other reason why you think a conspiracy was possible?

A:    No.

(Plaintiff's deposition, Vol II at 468-69.)

33

Thus, Hayes' testimony tends to negate any issue of fact with regard to a conspiracy with Brad Link because: "When a party has given clear answers to unambiguous [deposition] questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Clay v. Equifax, Inc.*, 762 F.2d 952, 955 (11th Cir. 1985) (quoting *Van T. Junkins and Associates v. U.S. Industries*, 736 F.2d 656, 657 (11th Cir. 1984)).

Hayes offers the affidavits of Jason Patterson and of Sue McMahan, and the deposition testimony of Tommy L. Cole in support of the conspiracy between Green and Link. This evidence, discussed in Part III.B.6 above, does more than "merely contradict[], without explanation," Hayes' earlier testimony.

Although that testimony of Hayes may prove fatal to his claim at trial, given the forgiving standard for alleging a civil conspiracy and the supporting evidence proffered by Hayes, the court finds summary judgment inappropriate. The court reiterates that if plaintiff's ADEA claim fails, so does this civil conspiracy claim. *See Allied Supply Co.*, 585 So. 2d at 36.

## I. Defamation (slander)

Under Alabama law, the elements of a cause of action for

34

defamation are: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication of that statement to a third party; (3) fault (at least to the level of negligence) on the part of the defendant; and (4) either *per se* defamation or the existence of special harm caused by the publication of the statement. *McCaig v. Talladega Publishing Co.*, 544 So. 2d 875, 877 (Ala. 1989).

Doyle Hayes contends Dale Green's statements to the employees of Club #8107 were slanderous. The contested remarks came immediately after Hayes' departure from the store in June of 1995. Green allegedly said that Hayes felt he was too old to change his ways and that he had saved enough money on which to retire.

The question of whether a statement is defamatory is, in the first instance, a question for the court. *See Harris v. School Annual Publishing Co.*, 466 So. 2d 963, 964 (Ala. 1985). A statement is considered defamatory under Alabama law if "it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter a third person from associating or dealing with him." *Id.* This court finds Green's statements do not rise to the level of harm required for defamation. Even if the statements were found to be defamatory,

35

they do not establish defamation *per se*, and plaintiff fails to prove any damages as a result of these statements.[9]  *See Clark v. America's First Credit Union*, 585 So. 2d 1367, 1371 (Ala. 1991).

Accordingly, the court finds defendants' motion is due to be granted for the defamation claim.

### IV. CONCLUSION

For the foregoing reasons, the court finds defendants' motion for summary judgment is due to be granted in part and denied in part.

An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the **6**th day of November, 1998.

United States District Judge

---

[9] Even if successful on the defamation and damages issues, Hayes would face other issues to establish this claim as well.  These issues include, most formidably, whether Green was entitled to immunity for the statements he made in the meeting to explain Hayes' departure, *see generally Willis v. Demopolis Nursing Home, Inc.*, 336 So. 2d 1117 (Ala. 1976), and also whether Green's statements to these employees constituted publication.  *See Dixon v. Economy Co.*, 477 So. 2d 353, 354 (Ala. 1985).

36